UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HORTENCIA VALENCIA,<br><br>Petitioner,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>Respondent. | No. 1:17-cv-01662-GSA<br><br><br>**ORDER REMANDING CASE FOR<br>FURTHER PROCEEDINGS UNDER<br>SENTENCE 4 OF 42 U.S.C. § 506(g)** |

## I.     <u>Introduction</u>

Plaintiff Hortencia T. Valencia ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]  *See* Docs. 15, 16 and 17.  Having reviewed the record as a whole, the Court finds that the ALJ's decision fails to comply fully with applicable law and is not supported by substantial evidence.  Accordingly, the Court remands the case for further proceedings pursuant to sentence four of 42 U.S.C. § 506(g).

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  *See* Docs. 7 and 9.

## II.     Procedural Background

Plaintiff first applied for disability insurance benefits and supplemental security income on December 22, 2010, alleging that she became unable to work on November 23, 2010.  AR 93. Both applications were denied initially on May 2, 2011, and upon reconsideration on July 11, 2011.  AR 93.  The record includes no evidence that Plaintiff further appealed the denial of the 2010 applications.  Plaintiff again applied for disability insurance benefits and supplemental security income on August 29, 2012.  AR 93.  On April 4, 2013, the Commissioner denied both 2012 applications finding that Plaintiff was not disabled prior to her last insured date of September 30, 2012.  AR 93, 113.  Nothing in the record indicates that Plaintiff sought reconsideration of those claims.

On September 16, 2014, Plaintiff filed an application for disability insurance benefits alleging disability beginning March 22, 2014.[2]  AR 15, 226.  Plaintiff's last insured date was September 30, 2012.  AR 17.  The Commissioner denied the application initially on November 18, 2014, and upon reconsideration on February 11, 2015.  AR 15.  On March 11, 2015, Plaintiff filed a timely request for a hearing before an Administrative Law Judge.  AR 15.  On September 9, 2016, Plaintiff requested that the onset date of her application be amended from March 22, 2014, to January 1, 2012, which request was implicitly granted.  AR 15, 226.

Administrative Law Judge Timothy S. Snelling presided over an administrative hearing on December 9, 2016.  AR 29-69.  Plaintiff, who was represented by an attorney, appeared and testified.  AR 29.  Impartial vocational expert Jose Chaparro also testified.  AR 29.

On March 8, 2017, the ALJ denied Plaintiff's application.  AR 15-23.  The Appeals Council denied review on October 18, 2017.  AR 1-4.  On December 11, 2017, Plaintiff filed a complaint in this Court.  Doc. 1.

///

///

---

[2] Plaintiff also sought supplemental security income benefits which were denied based on her household's resources. AR 122-28.  Plaintiff does not appeal the denial of that application.

2

1    **III.    Factual Background**[3]

2          **A.    Plaintiff's Testimony and Written Statements**

3          Plaintiff (born August 15, 1973) has a congenital deformity of her left upper extremity

4    consisting of partial fusion of the proximal radius and ulna (congenital radioulnar synostosis).

5    AR 35, 37, 74, 386-87, 388.  As a result, Plaintiff has limited supination[4] of her left hand.  AR 96.

6    AR 35, 37.  Plaintiff testified that despite pain she is able to use her left arm to reach and

7    manipulate objects except when her elbow locks and prevents her from extending her left arm.

8    AR 49.  No treatment is available to correct the deformity.[5]  AR 51, 96.

9          Plaintiff is right-handed.  AR 61.  Throughout her life Plaintiff has compensated by

10   performing the bulk of activities requiring manipulation with her right upper extremity resulting

11   in pain from overuse, particularly from bending her right elbow and thumb.  AR 35, 44.  Two to

12   three years[6] prior to Plaintiff's disability hearing, the pain in her right arm increased beyond her

13   tolerance and radiated toward her neck.  AR 36, 44.  Plaintiff treated the pain with a prescription

14   cream or oral ibuprofen.  AR 45.  Medication made the pain tolerable but did not eliminate it.  AR

15   46.

16         Plaintiff completed high school.  AR 37.  She recently worked as a teacher aide substitute

17   in a school office doing administrative work such as answering telephones, writing notes, and

18   keeping track of matters such as student absence and pick up. AR 37, 41-42.  The vocational

19   expert categorized this job as a general clerk (DOT No. 209.562-010; SVP 3), which is light,

20

21   _____
     [3] After the denial of Plaintiff's last prior application for disability benefits, Plaintiff also received treatment for
     various common ailments not related to her disability claim.  AR 563-75. Exhibit 9F also includes unrelated medical
22   records from dates as early as 1995.
     [4] When applied to the hands, supination refers to the ability to turn the palm upward or forward by lateral rotation of
23   the forearm.  *Dorland's Illustrated Medical Dictionary* at 1610 (28th ed. 1994).
     [5] As documented in the prior application, orthopedic surgeon Lisa L. Lattanza, M.D., who specialized in treating
24   hands and upper extremities, evaluated Plaintiff on February 29, 2012.  AR 388-90. Dr. Lattanza noted that Plaintiff
     was experiencing pain in both arms, with more severe pain in her right arm, and added that "Some of [Plaintiff's]pain
25   [wa]s difficult to explain and not related to her synostosis problem."  AR 388-89.  Plaintiff retained full flexion and
     extension of both elbows, 5/5 strength in both upper extremities, and good perfusion throughout.  AR 389.  Although
26   testing indicated bilateral grip strength of only ten pounds, Dr. Lattanza noted that Plaintiff may have limited her
     effort.  AR 389.   In Dr. Lattanza's opinion, no surgical alternative was advisable.  AR 389.
27   [6] Plaintiff's testimony was remarkable for her inability to associate her pain, injuries and treatment with an
     approximate date of occurrence and to recall the names of the prescriptions and other medications she used.
28
                                          3

semiskilled work, sedentary as performed.  AR 43.  Plaintiff also performed temporary work packing and sorting fruit.  AR 252.

## B.     Medical Records

The medical documentation submitted in accordance with the pending application is included in Exhibits 6F, 7F, 8F and 9F of the administrative record.  Most of these records relevant to Plaintiff's alleged disability relate to an injury to Plaintiff's right elbow in August 2014.  AR 514.  On September 9, 2014, three weeks after falling, Plaintiff went to the emergency department of Kahweah Delta Health Care District Hospital complaining of 10/10 right elbow pain.  AR 514.  X-rays revealed no fracture.  AR 515.  Dr. Peter C. Aijian, M.D., diagnosed arthritis and prescribed Gabapentin.  AR 519-20.  On October 3, 2014, radiologist Aaron Berkey, M.D., reviewed an MRI of Plaintiff's elbow and reported an "[e]ssentially normal study with perhaps minimal contusion [to] the medial olecranon."  AR 512.

On October 10, 2014, Plaintiff saw Rocio Munoz, PAC, at Family Healthcare Network to discuss the results of the MRI.  AR 552.  Plaintiff reported that the pain in her right elbow now also occurred in her right shoulder.  AR 552.  Other than pain at the tip of her elbow, Munoz's examination revealed nothing remarkable.  AR 552.  Motor strength in Plaintiff's upper and lower extremities was normal and sensory function was intact.  AR 552.

At a November 12, 2014, appointment with Munoz, Plaintiff complained of continued right elbow pain which now also affected her right wrist.  AR 538.  Plaintiff had discontinued Naproxen, which hurt her stomach, and Gabapentin, which gave her a headache.  AR 538.  Munoz observed that although the tip of the right elbow was tender, his examination was otherwise unremarkable and revealed mild pain and no swelling or deformity.  AR 538.  Munoz referred Plaintiff for physical therapy.  AR 540.

## IV.     Standard of Review

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on

4

legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V.     The Disability Standard

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

> 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§

///

5

1 | 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding
2 | that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his/her past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).

In addition, when an applicant has one or more previous denials of applications for disability benefits, as Plaintiff does in this case, he or she must overcome a presumption of nondisability. The principles of *res judicata* apply to administrative decisions, although the doctrine is less rigidly applied to administrative proceedings than in court. *Chavez v. Bowen,* 844 F.2d 691, 693 (9th Cir. 1988); *Gregory v. Bowen,* 844 F.2d 664, 666 (9th Cir. 1988).

Social Security Acquiescence Ruling ("SSR") 97–4, adopting *Chavez,* applies to cases involving a subsequent disability claim with an unadjudicated period arising under the same title of the Social Security Act as a prior claim in which there has been a final administrative decision that the claimant is not disabled. A previous final determination of nondisability creates a presumption of continuing nondisability in the unadjudicated period.  *Lester v. Chater,* 81 F.3d 821, 827 (9th Cir. 1995). The presumption may be overcome by a showing of changed circumstances, such as new and material changes to the claimant's residual functional; capacity, age, education, or work experience. *Id.* at 827–28; *Chavez,* 844 F.2d at 693.

**VI.    Summary of the ALJ's Decision**

Although the ALJ acknowledged the existence of a prior application (AR 19), he neither addressed the application of SSR 97-4, *Chavez* or *Gregory*, nor identified the changed circumstance sufficient to overcome the presumption of no disability.

///

6

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 15-23. The ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of January 1, 2012,[7] through her last insured date of September 30, 2012. AR 17. Her severe impairments included congenital left upper extremity deformity versus proximal left forearm radicular synostosis, arthritis, a history of lymphadenopathy, a history of chronic pain syndrome, a history of headaches, a history of gastritis versus dyspepsia, general anxiety disorder and depression. AR 17. The ALJ found that none of the severe impairments met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526); and that Plaintiff had the residual functional capacity to perform a wide range of light work as defined in 20 C.F.R. §§ 404.1567(b). AR 18-19. Plaintiff was able to lift and carry twenty pounds occasionally and ten pounds frequently; stand, sit and walk six of eight hours; occasionally push or pull with her left upper extremity; and, perform gross manipulation and fine manipulation and feeling with the left upper extremity. AR 19. Plaintiff could occasionally climb ladders, ropes, and scaffolds, but all other postural activities were not limited. AR 19.

Thus, the ALJ concluded that Plaintiff could perform her past relevant work as a general clerk (DOT 209.562-010, light, SVP 3, performed at sedentary). AR 22. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity. AR 22. Plaintiff was also able to perform other jobs existing in the national economy. AR 22-23. Accordingly, the ALJ found that Plaintiff was not disabled from January 1, 2012, through September 30, 2012, the date on which Plaintiff was last insured. AR 23.

///

///

///

---

[7] The hearing decision does not acknowledge the originally alleged onset date of March 22, 2014, or indicate that the effective date of January 1, 2012, amended the onset date in response to Plaintiff's motion.

**VII.    Whether the ALJ Intended to Re-Open the Previous Determination
That Plaintiff Was Not Disabled Before the Last Date Insured**

As noted above, in the last prior proceeding, the Commissioner determined that Plaintiff's "condition was not disabling on any date through 9/30/12, when [Plaintiff was] last insured for disability benefits."  AR 113.  In September 2014, Plaintiff, proceeding *pro se*, applied for disability insurance benefits and supplemental security income, specifying an onset date of March 22, 2014.  AR 90, 204.  Plaintiff later retained counsel.  AR 152-54.  On September 9, 2016, Plaintiff's counsel moved to amend the onset date to January 1, 2012.  AR 226.

Although the administrative record does not document whether the Commissioner explicitly granted counsel's request, the hearing decision found the alleged onset date to have been January 1, 2012.  AR 15.  Without acknowledging that the Commissioner had previously determined that Plaintiff was not disabled from January 1 through September 30, 2012, the 2017 hearing decision considered whether Plaintiff was disabled in the same period.  However, the hearing decision states: "Any discussion of evidence from the prior application is for historical purposes only and does not imply reopening."  AR 19.

On April 2, 2019, the Court raised this issue on its own motion and directed the parties to file memoranda of law addressing whether the Court could consider Plaintiff's substantive challenges to the Commissioner's denial of the September 2014 application for disability insurance benefits.[8]  Plaintiff responded that her appeal is appropriate because by considering the administrative record as a whole and not denying the claim based on *res judicata*, the ALJ

---

[8]  Courts generally do not address issues not raised by the parties on appeal.  F.R.App.P. 28(a); *Crawford v. Gould*, 56 F.3d 1162, 1169 (9th Cir. 1995).  Nonetheless, a court may raise an issue *sua sponte* to prevent injustice, *Morales v. Astrue*, 2010 WL 2629571 at *8 (C.D. Cal. June 29, 2010) (No. CV 09-2494-PJW), or to raise an affirmative defense not raised by the defendant, *Tahoe-Sierra Preservation Council, Inc., v. Tahoe Regional Planning Agency*, 216 F.3d 764, 788-89 (9th Cir. 2000), overruled on other grounds, *Gonzales v. Arizona*, 677 F.3d 383, 389 n. 4 (9th Cir. 2012); *Moore v. Astrue*, 2011 WL 1532407 at *3 (D. Mont. Mar. 30, 2011) (No. CV-10-36-GF-SEH-RKS).

implicitly reopened the prior application. Doc. 19. The Commissioner agreed adding that the ALJ's consideration of the earlier evidence, and acceptance of an earlier onset date, constituted a *de facto* or constructive re-opening of Plaintiff's prior application. Doc. 20.

"Generally, if [a claimant is] dissatisfied with a determination or decision made in the administrative review process but does not request further review within the stated time period, [the claimant] lose[s the] right to further review and that determination or decision becomes final." 20 C.F.R. § 404.987(a). Nonetheless, a claimant may request, or the Commissioner may reopen, an otherwise binding decision for revision. 20 C.F.R. § 404.987(b); *Davis v. Schweiker,* 665 F.2d 934, 935-36 (9th Cir. 1982*)*. The regulations list thirteen conditions which may justify re-opening a decision. 20 C.F.R. § 404.988. Based on the information available from the administrative record, the only apparent basis for Plaintiff to have formally requested reopening was for good cause within four years of the last prior decision. 20 C.F.R. § 404.988(b). Proof of good cause includes (1) the furnishing of new and material evidence, (2) correction of a clerical error in the computation or re-computation of benefits, or (3) a clear error made in evaluating evidence that was considered in making the decision. 20 C.F.R. § 404.989(a). Here, Plaintiff did not request that the prior determination be reopened. Further, the only new evidence of Plaintiff's physical condition consisted of Plaintiff's claim of right elbow pain following a fall in August 2014, nearly two years after the last date on which she retained disability insurance benefits.

Despite the administrative provisions, an ALJ is considered to have constructively reopened the earlier decision if the ALJ knows that an earlier application was denied but proceeds to consider proffered evidence on its merits to determine whether the claimant was disabled during the already adjudicated period. *Lewis v. Apfel*, 236 F.3d 503, 510 (9th Cir. 2001). When an ALJ does not restrict his evidentiary inquiry or his findings to the time period after the last

determination, "it is clear that no *re judicata* effect was afforded the prior denial of benefits." *Castorena v. Heckler*, 575 F.Supp. 316, 318 (N.D. Cal. 1983).

The parties contend that the ALJ's acceptance of the January 2012 onset date constituted sufficient knowledge of the prior determination that Plaintiff was not disabled through her last insured date (September 30, 2012). Plaintiff suggests that "it seems like tortured logic to suggest that *both* the State Agency and the ALJ overlooked altogether the existence/import of the 2013 decision." [9] Doc. 19 at 3-4. Accordingly, both parties interpret the ALJ's acceptance of the amended January 2012 onset date to constitute a de facto reopening of the prior decision providing this Court with jurisdiction to review the March 2017 denial of benefits.

The ALJ's intent is not as clear as the parties suggest. In the hearing decision, the ALJ explicitly expressed an intent contrary to de facto reopening, writing: "Any discussion of evidence from the prior application is for historical purposes only and does not imply reopening." AR 19. The ALJ's disclaimer distinguishes this case from *Lewis* and its progeny. *See, e.g., Reed-Goss v. Astrue*, 247 Fed. Appx. 923 (2007).

If the hearing decision were otherwise well reasoned, based on applicable law, and supported by substantial evidence, the Court would be inclined to treat the inconsistency as harmless error. But, because the hearing decision is replete with other error, this order will direct Defendant to address the inconsistency between the ALJ's disclaimer concerning the use of evidence from prior cases and the ALJ's implicit acceptance of Plaintiff's motion to amend the onset date to January 2012.

///

---

[9] In fact, on initial review, the state agency requested clarification of the last insured date by telephone and was verbally advised that Plaintiff actually was insured through June 2016. AR 95. Neither the agency nor the Commissioner again reference a date last insured of June 2016.

## VIII.   The ALJ Incorporated All Aspects of Dr. Fast's Opinion

Plaintiff contends that the ALJ erred in failing to consider fully Dr. Fast's opinion that Plaintiff could only perform one-armed work.  Doc. 15 at 10.  The Commissioner disagrees, pointing out that the ALJ's determination of Plaintiff's residual functional capacity was appropriately based on Dr. Fast's opinion as a whole.  The Court concurs in the Commissioner's assessment.

### A.   Agency Physicians' Opinions

Agency physician, Roger Fast, M.D., initially responded to agency examiner J. Valenzuela's request for advice about how to address Plaintiff's right arm injuries that occurred in 2014 given the minimal impact of Plaintiff's impairments on her activities of daily living.[10] AR 96.  On November 7, 2014, Dr. Fast opined that because the MRI revealed that Plaintiff's right arm was only bruised, and any effects of the injury were not expected to last a year, the injury was not severe.  AR 96.  In the same note, Dr. Fast proposed a potential resolution to Plaintiff's application if the agency could confirm the congenital deformity of Plaintiff's left arm. AR 96.

On November 14, 2014, Dr. Fast appended the following recommendation:

> When I first reviewed this case I didn't think to look at her prior files, which I have now done.  She has imaging evidence that shows congenital fusion of the proximal radius and ulna.  She had a consultation at USCF in 02/12 where her left arm function is described.  Her resting position is in full pronation and she has limited supination.  Flexion and extension of the elbow is normal, and she has 5/5 motor and good grip.  No treatment is available.

///

---

[10] The agency analyst and Dr. Fast believed that Plaintiff's last insured date was June 2016, based on verbal information provided by the "FO."  AR 95.  No other reference to this later date appears in the record, and all findings thereafter found the last insured date to be September 30, 2012.  Any injuries that Plaintiff incurred in 2014 would not be relevant if she were no longer eligible for disability insurance benefits.

Light, one-arm restrictions are appropriate based on her credible allegation that she has to do things one-handed. I will provide an RFC.

AR 96.

Thus, Dr. Fast opined that Plaintiff should be limited to light work with one-arm restrictions. AR 96. Specifically, Dr. Fast opined that Plaintiff was able to lift or carry twenty pounds occasionally and 10 pounds frequently, and sit, stand or walk six hours in an eight-hour workday. AR 98. Plaintiff was limited to occasionally pushing or pulling, handling, fingering and feeling with her left upper extremity. AR 98. On reconsideration, agency physician A. Nasrabadi, M.D., agreed with Dr. Fast's assessment. AR 109-11.

**B.        The ALJ's Determination of Residual Functional Capacity**

As noted above, the ALJ concluded that Plaintiff had the residual functional capacity to perform a wide range of light work as defined in 20 C.F.R. §§ 404.1567(b). AR 19. Plaintiff was able to lift and carry twenty pounds occasionally and ten pounds frequently; stand, sit and walk six of eight hours; occasionally push or pull with her left upper extremity; and, perform gross manipulation and fine manipulation and feeling with the left upper extremity. AR 19. Plaintiff could occasionally climb ladders, ropes, and scaffolds, but all other postural activities were not limited. AR 19.

**C.        Substantial Evidence Supported the ALJ's Determination**

Plaintiff interprets the phrase "one-arm restrictions" to mean a determination of residual functional capacity that did not contemplate any use of her left arm. Nothing in the record suggests that Plaintiff's interpretation was what Dr. Fast intended in using that term. Considering the opinion completely and in context, the ALJ reasonably concluded that Dr. Fast intended to apply restrictions only to Plaintiff's left arm since he did not expect that the impairment of Plaintiff's right arm would persist for a full year.

12

Because the hearing decision adopted Dr. Fast's opinion of Plaintiff's residual functional capacity in full, it was supported by substantial evidence. Even if the Court were to assume that Plaintiff's alternative interpretation could also be considered to be supported by Dr. Fast's opinion, that interpretation does not control the Court's decision. If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson*, 112 F.3d at 1066.

## IX. Step Four: Inconsistencies Between DOT and Plaintiff's Residual Functional Capacity

Plaintiff contends that because the ALJ failed to ask the vocational expert to explain conflicts between the expert's testimony and the Dictionary of Occupational Titles ("DOT"), the ALJ erred in concluding that Plaintiff could perform her past work as a general clerk. Doc. 15 at 6-7. The Commissioner responds that at each step the ALJ's determination was supported by substantial evidence. Because the ALJ performed the step-four analysis using a prior job that is not included in the administrative record and about which the vocational expert did not offer an opinion at the administrative hearing for this application, the Court finds that the ALJ's finding was not supported by substantial evidence. As a result, the Court is unable to analyze Plaintiff's claim that the ALJ failed to resolve inconsistencies between the expert's testimony and the DOT.

### A. The Step-Four Analysis, In General

At step four of the disability analysis, the claimant has the burden to prove he cannot perform his prior relevant work "either as actually performed or as generally performed in the national economy." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2005).

The DOT is "the best source for how the job is generally performed." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001). The DOT describes the requirements for each listed

13

occupation and is the primary source of reliable job information for jobs in the national economy. DOT, App. C, 1991 WL 688702 (4th ed. 1991); *Zavalin v. Colvin*, 778 F.3d 842, 845-846 (9th Cir. 2015); *Pinto*, 249 F.3d at 845.  The DOT and its Selected Characteristics of Occupations ("SCO") supplement may be relied upon as the rebuttable presumptive authority regarding job classifications. *Johnson v. Shalala*, 60 F. 3d 1428, 1435 (9th Cir. 1995).

While the claimant is the primary source for vocational documentation, the ALJ may also utilize a vocational expert to assist in the step four determination as to whether a claimant is able to perform his/her past relevant work. 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).  Although the burden of proof is on the claimant at step four, the ALJ still has the duty to make the requisite factual findings to support his conclusion. SSR 82–62.  In particular, an ALJ's step-four determination must contain the following: (1) a finding of fact as to the individual's residual functional capacity; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and, (3) a finding of fact that the individual's residual functional capacity would permit a return to his or her past job or occupation. SSR 82–62, 1982 WL 31386, at *4.  In classifying prior work, the agency must keep in mind that every occupation involves various tasks that may require differing levels of physical exertion.

### B.      Resolving Inconsistencies, In General

In determining whether appropriate jobs exist for a claimant, the ALJ generally will refer to the DOT, which sets forth "detailed physical requirements for a variety of jobs." *Light v. Social Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997).  An ALJ must take judicial notice of reliable job information available from various governmental and other publications, including the DOT.  20 C.F.R. § 416.966(d); SSR 00-4p at *2.  The DOT is the primary source of "information about the requirements of work in the national economy."  SSR 00-4p at *2.  In

addition, the agency may use the services of a vocational expert or other specialist to assist in determining a complex issue, such as whether a claimant's job skills can be used in a specific occupation. 20 C.F.R. § 416.966(e); SSR 00-4p at *2.

Social Security Ruling 00-4p was intended, among other things, to clarify standards for the use of vocational experts in administrative hearings. SSR 00-4p at *1. The ruling emphasizes that before relying on a vocational expert's testimony to support a disability determination or decision, an ALJ must: "Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by vocational experts . . . and [e]xplain in the determination or decision how any conflict that has been identified has been resolved." *Id.* The ruling imposes "an affirmative responsibility" to ask about any conflict between the vocational expert's testimony and information provided in the DOT. SSR 00-4p at *4. The ALJ must:

> Ask the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.
>
> SSR 00-4p at *4.

An ALJ can only properly rely on testimony inconsistent with the DOT after he or she has determined both whether the vocational expert has deviated from the DOT and whether any deviation is reasonable. *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007).

### C. Plaintiff's Testimony

Plaintiff testified that she last worked as a teacher aide substitute, filling in as-needed for a school aide who was not present in school because of illness or other reason. AR 37-38. In this position, Plaintiff worked in the school office answering phones, writing notes, looking up students who were absent or were needed when parents came to pick them up. AR 41-42. If a student was absent, Plaintiff would telephone their home to confirm that their parents knew that

the student was not attending school that day. AR 42. Plaintiff never worked in a classroom. AR 42. In response to questioning, Plaintiff explained that she could no longer work as a teacher aide substitute because repetitive movements caused increasing pain in her right elbow. AR 44.

### D. Vocational Expert Testimony

After hearing Plaintiff's description of her duties as a substitute teacher aide (AR40-43), the vocational expert Jose Chaparro classified Plaintiff's prior work as general clerk (DOT No. 209.562-010 (light, semiskilled, SVP 3)). AR 43. Because Plaintiff spent most of the work day sitting and lifted no more than five-to-ten pounds, Mr. Chaparro noted that Plaintiff had performed the job at a sedentary level. AR 43.

### E. The ALJ's Step-Four Analysis

The ALJ first determined that Plaintiff had the residual functional capacity to perform a wide range of light work with various additional restrictions including occasional feeling and gross and fine manipulation with her nondominant left upper extremity. AR 19. In the initial determination set forth in his discussion of step four, the ALJ adopted the vocational expert's opinion, given in the course of a hearing that considered the teacher aide substitute job to be Plaintiff's prior relevant work, that (1) Plaintiff's prior work was best classified as a general clerk (DOT No. 209.562-010 (light, semiskilled, SVP 3)) with work performed at the sedentary level and, (2) Plaintiff was capable of performing the duties of her prior position as it was actually performed. AR 22. However, the body of the analysis read:

> A job is considered past relevant work if it is work that the claimant has performed within the past 15 years, that met the definition of substantial gainful activity, and that lasted long enough for the claimant to learn to do it. (20 CFR 404.1560(b)(1)). The claimant performed work in 2003 at *Global Motorsport Parts, Inc*., earning [$]12,810.72 (Exhibit 6D [AR 219-21]). The claimant earned in excess of the $800 per month requirement for this position to be considered past relevant work. The VE testified that the claimant could perform this work.

AR 22 (emphasis added).

///

16

**F.      Teacher Aide Substitute or Global Motorsports Parts**

The ALJ's step four analysis never mentions the teacher aide substitute position, referring instead to Plaintiff's 2003 position at Global Motorsport Parts.  A careful review of the record as a whole reveals no mention of Global Motorsports Parts or any information of the title or responsibilities of Plaintiff's job there in 2003.  Instead, on both the initial review and reconsideration, the agency's assessment of vocational factors identified Plaintiff's past work as Teacher Aide Substitute from January 2014 to March 2014.  AR 100, 111.  And at both the initial and reconsideration levels, the agency found Plaintiff to have no past relevant work.  AR 100, 111.

As set forth in the factual background discussion above, Plaintiff testified concerning the nature of her employment as a teacher aide substitute.  AR 37, 40-42.  In response to the ALJ's question, Plaintiff did not remember what job she had in 2003.  AR 38.  After considering Plaintiff's testimony of her work as a teacher aide substitute, the vocational expert identified the teacher aide position as being "basically a general clerk, which is light work, semiskilled, with an SVP of 3; the DOT code is 209.562-010."  AR 43.  Because Plaintiff generally performed her work seated and lifted ten pounds at most, the vocational expert characterized the teacher aide job to be sedentary as performed.  AR 43.

In the course of the vocational expert's testimony, the ALJ and Plaintiff's counsel had a brief colloquy concerning the agency's determination that Plaintiff lacked substantial gainful activity.  AER 62. Plaintiff's attorney acknowledged that the earning schedule listed substantial earnings in "at least a couple years."  AR 62.  Without further discussion, the ALJ rejected the agency's determination that Plaintiff had no substantial gainful activity as likely error.  AR 62.

///

17

The listing of Plaintiff's covered FICA earnings for the fifteen years prior to her 2014 application for disability insurance benefits reveals that she had substantial gainful activity only in 2003 when she earned $13,977.99 from two jobs. AR 219. No employer is identified by name. The listing provides no apparent designation of the type of work performed by the employee. Although it is possible that the ALJ relied on evidence from one or more prior applications, including the testimony of one or more vocational experts, any such reliance is neither disclosed or appended to the record of the 2014 application.

A reviewing court should not be "forced to speculate" on the grounds for an adjudicator's determination. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). In any event, to identify Global Motorsport Parts as Plaintiff's 2003 employer, and identify her job as a general clerk, the ALJ had to have used evidence secured from outside the administrative record.

Because the ALJ elected to apply Plaintiff's and the vocational expert's testimony concerning the teacher aide substitute job to an earlier job that Plaintiff did not recall, that was not detailed in the administrative record and that the vocational expert did not consider, the Court cannot conclude that the step four determination was based on substantial evidence. As a result, the Court cannot evaluate Plaintiff's contention that the ALJ failed to resolve inconsistencies between her prior job and the DOT listing for general clerk.

## X.     Step Five: Reliance on Medical Vocational Guidelines

Plaintiff contends that because the limitations on her using her left hand constituted a non-exertional impairment, the ALJ erred by relying on the Medical Vocational Guidelines (the "grids") at step five to determine that Plaintiff was not disabled. The Commissioner counters that because Plaintiff's limited use of her left hand did not significantly erode the occupational base of light work, and the ALJ therefore did not err in basing his determination on the grids.

Non-exertional impairments include environmental, postural and mental limitations. SSR 83-14, 1983 WL 31254 at *1-2 (1983). When a claimant has a non-exertional limitation or restriction imposed by a medically determinable impairment, the grids generally do not mandate a determination that the claimant is disabled or not disabled. SSR 83-14, 1983 WL 31254 at *1 (1983). Instead, the ALJ in such a case must use the grids as a framework along with the regulations to determine disability. *Id.*

An ALJ does so by considering the range of jobs available to a person with the claimant's strength capability (i.e., sedentary, light or medium work), disregarding the jobs that are unsuitable based on the claimant's non-exertional limitations and determining how much of the potential occupational base remains. *Id.* at *2. *See also* 20 C.F.R. § 200.00(e)(2). "[T]he ALJ may meet his burden of proof by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations." *Timmons v. Comm'r of Soc. Sec.*, 546 F. Supp.2d 778, 797 (E.D. Cal. 2008) (citing *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). In other words, when the claimant's non-exertional impairments render the grids are inapplicable, the ALJ must obtain vocational expert testimony. *Timmons*, 546 F.Supp.2d at 797 (citing *Burkhart v. Bowen*, 856 F.2d 1335, 1341 (9th Cir. 1988). If the claimant's non-exertional limitations do not significantly reduce the range of jobs available based the claimant's exertional capabilities, the ALJ may apply the grids. *Bates v. Sullivan*, 894 F.2d 1059, 1063 (9th Cir. 1990), *overruled in part on other grounds*, *Bunnell*, 947 F.2d at 342.

The ALJ attempted to follow the requisite procedure here, first asking the vocational expert whether a hypothetical individual capable of performing light work, except for limitations

///

of gross and fine manipulation and feeling with her left extremity, could perform work such as the school aide substitute job the vocational expert has previously categorized as general clerk (DOT No. 209.562-010). AR 61. The vocational expert opined that the hypothetical person could perform such work. AR 61. Distracted by the agency's statement that Plaintiff had no past relevant work, and reception problems with the vocational expert's telephone connection, the ALJ did not continue the process and ask the vocational expert whether the hypothetical person could perform any other work, or whether the non-exertional impairment of the left hand significantly reduced the universe of jobs otherwise available to a person generally capable of light work. AR 61-62.

Even though he failed to elicit vocational expert testimony concerning the extent to which the vocational base was diminished by Plaintiff's non-exertional impairment, the ALJ concluded that jobs existed in significant numbers that Plaintiff was able to perform. AR 23. Unfortunately, no substantial evidence supporting that fact is apparent in the record. The ALJ erred in failing to secure supporting testimony from the vocational expert or set forth supportive evidence elsewhere in the record.

## XI.    Reversal With Award of Benefits is Inappropriate

The decision whether to remand a matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate repayment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Generally, an award of benefits is directed only where no useful purpose would be served by further administrative proceedings or where the record is fully developed. *Varney v. Sec'y of Health and Human Serv.*,

///

///

859 F.2d 1396, 1399 (9th Cir. 1988). When a court reverses an administrative agency determination, the proper course, except in rare instances, is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *Immigration & Naturalization Serv. v. Ventura*, 537 U.S. 12, 16 (2002)). Remand for further proceedings is appropriate when, as in this case, an evaluation of the record as a whole creates serious doubt as to whether the claimant is in fact disabled. *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014). "Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014).

## XII.    Conclusion and Order

It is hereby ordered that this case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further analysis and findings based in the administrative record concerning whether Plaintiff proved entitlement of disability insurance benefit as of December 9, 2016, the date of the agency hearing. Specifically, the Commissioner is directed (1) to determine whether the ALJ implicitly reopened the last prior proceeding despite the ALJ's explicit statement of contrary intent; (2) to supplement the record at step four as is necessary to incorporate the evidence on which the ALJ relied concerning Plaintiff's prior unspecified job at Global Motorsports Parts; (3) to obtain the testimony of a vocational expert concerning Plaintiff's ability to perform her prior unspecified job at Global Motorsports in light of her residual functional capacity; and, if the case is not resolved at step four, (4) to obtain the testimony of a vocational expert to determine (a) whether the ALJ may resolve the case using the Medical Vocational Guidelines because Plaintiff's non-exertional limitations do not significantly reduce the range of

///

21

light jobs available or (2) whether jobs that a hypothetical individual with Plaintiff's residual functional capacity exist in significant numbers in the national economy.

The Clerk of Court is directed to enter judgment in favor of Plaintiff Hortencia Valencia and against Defendant Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   __**April 30, 2019**__                 _____**/s/ Gary S. Austin**__
                                              UNITED STATES MAGISTRATE JUDGE